Subhan Tariq, Esq.
90-52 171 Street
Jamaica, NY 11432
Ph: 516-900-4529
Fax: 516-453-0490
subhan@tariqlaw.com
Attorney for Plaintiff

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Gwendolyn Sanford,<br>    Plaintiff,<br><br>v.<br><br>Bayview Loan Servicing LLC; JPMorgan Chase Bank NA; Federal Home Loan Mortgage Corporation as Trustee for Freddie Mac Multiclass Certificates Series 3391; and Does 1 through 100 Inclusive,<br>      Defendants. | VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL<br><br>Civil Action No. 16cv00858 |

The Plaintiff, Gwendolyn Sanford (hereinafter referred to as "Plaintiff" or "Borrower"), as and for her Verified Complaint submitted pursuant to Federal Rules of Civil Procedure Rule 15 against "BAYVIEW LOAN SERVICING LLC", "JPMORGAN CHASE BANK NA", "FEDERAL HOME LOAN MORTGAGE CORPORATION AS TRUSTEE FOR FREDDIE MAC MULTICLASS CERTIFICATES SERIES 3391" and "DOES 1 THROUGH 100 INCLUSIVE" alleges as follows:

### JURISDICTION AND VENUE

1.  This Court has subject matter jurisdiction pursuant to the following statutes: 28 U.S.C. § 1331, providing for "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"; and 28 U.S.C. § 1367(a), providing for "supplemental jurisdiction over all other claims that are so related to claims in the action within

such original jurisdiction that they form part of the same case or controversy." This Court also has jurisdiction over the claims, because this case involves New York common law trusts.

2.     This Court has supplemental subject matter jurisdiction under 28 U.S.C. §§ 1331, 1337(a), and 1345; under 12 U.S.C. § 5565(a)(1) with respect to CFPA claims and; under 12 U.S.C. § 2614 with respect to RESPA claims.

3.     Specifically, this Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331, 1343, 2201, 2202, 12 U.S.C. § 2605, 15 U.S.C. § 1692, 1681, and 42 U.S.C. § 1983 which confer original jurisdiction on federal district courts in suits to address the deprivation of rights secured by federal law, as well as the specific grants of federal court jurisdiction under the federal laws represented by TILA, FDCPA, FCRA, RESPA, HOEPA, the Securities Act of 33, the Wire Act, the Mail Fraud Act, Bank Fraud, and RICO, as this is a civil action arising under the laws of the United States.

4.     Plaintiff can and will amend this Complaint as the facts of actual violations of any of the above listed federal laws/statutes become known or ascertained as they occurred prior to the filing of this lawsuit and/or during the course of litigation from any of Defendants' so named failed to perform conditions precedent under Federal Law to resolve certain matters in dispute with Plaintiff and warrant any named Defendants and each of the fictitiously named Defendants are responsible in some manner for the injuries and damages to Plaintiff so alleged and that such injuries and damages were proximately caused by such Defendants, and each of them.

5.     Venue is proper in this District under 28 U.S.C. §1391(b)(1), because Defendants are residents of and/or conduct business in this District. This Court has personal jurisdiction over Defendants because they are residents of and/or conduct business in this District and under N.Y.

C.P.L.R. 301, New York's long arm statute.  The claims also relate to Defendant's role as trustee over a trust created under New York law and/or administered at least in part in New York.

## PARTIES

6.      Plaintiff resides at 116 Creekside Drive, Dallas, Georgia 30157 in Paulding County and is, in all respects material hereto, sui juris.

7.      Defendant BAYVIEW LOAN SERVICING LLC (hereinafter referred to as "Bayview") is a corporation formed under the laws of Delaware and can be served with process through its registered agent Corporation Service Company, 80 State Street, Albany, NY 12207.

8.      Defendant JPMORGAN CHASE BANK NA (hereinafter referred to as "Chase") is a national banking association doing business throughout this district. Defendant can be served with process through its Registered Agent CT Corporate System, 111 Eighth Avenue #13, New York, New York 10011.

9.      Defendant FEDERAL HOME LOAN MORTGAGE CORPORATION AS TRUSTEE FOR FREDDIE MAC MULTICLASS CERTIFICATES SERIES 3391 (hereinafter referred to as "Trust") is a securitized trust doing business in this district. Defendant can be served at 8200 Jones Branch Drive, Mclean, Virginia 22102.

10.      Defendants DOES 1 THROUGH 100 INCLUSIVE are individuals or corporations that aided and abetted in the civil conspiracy to deny Plaintiff's due process by filing an action without the capacity to sue on or about August 2015.  See Exhibit A for Plaintiff's affidavit for the record.

11.      Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, each of the Defendants were the agents, employees, servants and/or the joint-ventures of the remaining Defendants, and each of them, and in doing the things alleged herein

below, were acting within the course and scope of such agency, employment and/or joint venture.

## GENERAL ALLEGATIONS

12.     On or about October 24, 2007 (the "Closing"), Plaintiff purchased the property located 116 Creekside Drive, Dallas, Georgia 30157, in Paulding County (hereinafter the "Property").  The Property was acquired with a mortgage loan in the sum of $224,000 originated by WAMU (the "loan").  WAMU at some time assigned loan to Chase.

13.     The loan to Plaintiff was underwritten without proper due diligence by non-party Washington Mutual ("WAMU").  WAMU failed to verify the Borrowers' income utilizing signed IRS Income Tax Disclosure Form 4506T which would have provided past Borrower tax returns. WAMU also used a "GDW Cost of Savings" as the Index for the basis of this loan. Because the Lender controlled this Index and it is directly based upon the average rate of interest LIBOR, it was not a valid index for the basis of the loan.

14.     There is securitization fraud on this particular loan. This particular loan trust had a "cut off " date on or about November 30, 2007.  WAMU is known for not securitizing its loans within the 30 day window set forth in its pooling and servicing agreements; in fact, congressional investigations have revealed that this problem with WAMU was particularly rampant in 2007. This extremely narrow window for this loan to have made it into the trust indicates that the loan may not have made it into the REMIC trust in accordance with its own prospectus and thus is outside the trust and does not get "tax free" REMIC status.  This also represents a break in the chain of title and therefore, M&T Bank lacks standing to foreclose.

15.     The act of placing the Note into the Trust effectively separates it from the Mortgage, and this would not allow a foreclosure action to be taken by any claimed holders, as they would not be in possession of BOTH the Note and the Mortgage, as required to rightfully

foreclose.

16.     Plaintiff began a series of attempts to get a loan modification in 2012. Each attempt was met with repeated delays due to Chase claiming the previously submitted paperwork was lost or incomplete.  Plaintiff was told repeatedly by Chase, over several months, that she needed to resubmit the same paperwork over and over again, and that yes, she would be able to get a modification. Each of these claims by Chase were mad in bad faith.

17.     In May of 2012 Chase sent Plaintiff a 6 month forbearance repayment agreement. Plaintiff was informed that at the end of the trial period, she would receive a permanent modification. After making all payments timely, Plaintiff received a letter, in January of 2013, informing her that after two reviews she did not qualify for a HAMP modification.  Plaintiff contends that these actions by Chase were done in bad faith, with no intention of every actually offering or granting a modification.  Plaintiff contends that Chase engaged in Unfair and Deceptive Business Practices.

18.     On or about February 11, 2013 Plaintiff again applied for a modification with Chase through Taneisha Ham, executive specialist.  After several attempts, Plaintiff was again wrongfully denied a modification by Chase and a foreclosure sale date was set for May 7, 2013.

19.     On March 7, 2013 there was an assignment entered into the Paulding County Georgia records where WAMU assigned its interests over to Chase.  This is highly unusual because WAMU went out of business in 2008 and was taken over by the F.D.I.C.  How could WAMU assign anything 5 years after is no longer in business?

20.     On or about July 23, 2013 Plaintiff received a letter from Freddie Mac Loan Modification Program indicating that she may be eligible for their modification program. After attempting a modification with them, she was again wrongfully denied.  Plaintiff contends that

Freddie Mac has acted in bad faith regarding offering and then denying Plaintiff a modification.

21.     On or about September 16, 2014 the Deed of Trust was transferred to M&T Bank, and Bayview became the servicer shortly thereafter. On September 1, 2015 M&T was granted a judgment of foreclosure and sale.  Plaintiff contends this was a wrongful foreclosure as she had applied for modifications and was a victim of violations of the Fair Debt Collections Practices Act as well as promissory estoppel.

22.     In addition, and unbeknownst to Plaintiff, WAMU illegally, deceptively and/or otherwise unjustly qualified Plaintiff for a loan which WAMU knew or should have known that Plaintiff could not qualify for or afford. For example, the underwriter approved this loan based upon credit scores and the Plaintiff "Stated Income". Had WAMU used a more accurate and appropriate factor, such as Tax Forms and a more determinative level of scrutiny of determining comply with the requirement to provide Plaintiff with a Mortgage Loan Origination Agreement the debt to income ratio, Plaintiff would not have qualified for the loan in the first place. Consequently, WAMU sold Plaintiff a loan product that it knew or should have known would never be able to be fully paid back by Plaintiff. WAMU ignored long-standing economic principals of underwriting and instead, knowingly, greedily and without any regard for Plaintiff's rights sold Plaintiff a deceptive loan product.

23.     At all times material hereto Defendants knew of WAMU's actions and participated in them.

24.     Chase and M&T Bank are the successors in interest to WAMU and responsible for the actions of WAMU.

25.     On September 1, 2015 there was a judgment of foreclosure sale granted, but a title search conducted on December 22, 2015 still does not show a judgment entered into the Paulding County Records.

26.     On January 30, 2016 Plaintiff obtained a securitization audit, referenced hereto as Exhibit B.

27.     At some point in time the Mortgage and/or note was allegedly transferred to Trust.

28.     At all times material hereto, the Trust was required to comply with the terms and condition of its Pooling and Servicing Agreement ("PSA"). The PSA sets forth all of the criteria which each loan which is transferred to the PSA must meet, and further sets forth the procedures that must be filed for each loan that is transferred to the PSA.

29.     In addition the Trust was required to comply with NY Trust Law with regard to the acquisition of the subject loan.

30.     At all times material hereto, the servicing of the loan was also subject to the terms and conditions set forth in the PSA.

31.     Trust and M&T Bank claim that they are the Owner and that the Servicer is Bayview, respectfully, for the Plaintiff's Mortgage and Note. However, neither Trust, nor M&T Bank can show proper receipt, possession, transfer, negotiation, assignment, and/or ownership of Plaintiff's original Promissory Note and Mortgage, resulting in imperfect security interests and claims.

32.     According to the PSA, Plaintiff's note and Mortgage had to be indorsed and assigned, or transferred, respective, to the trust and executed by multiple intervening parties before it reached the Trust.

33.     Plaintiff is informed and believes, and thereon alleges, that the Note and Mortgage executed by Plaintiff in favor of the original lender and other Defendants was not properly assigned and/or transferred to Defendants in accordance with the PSA and/or New York trust law to the entities making and receiving the purported assignments to this trust.

34.     More specifically, the Note and Mortgage were allegedly assigned to the Securitized Trust by the closing date. Therefore, under the PSA, the purported assignment, if any, to the Trust was attempted subsequent to the specified closing date for the Trust as provided in the PSA and is therefore invalid and/or void.

35.     Plaintiff further alleges that even if the Note and Mortgage had been transferred into the Trust by the closing date, the transaction is still invalid and/or void as the Note would not have been transferred according to the requirements of the PSA, since the PSA requires a complete and unbroken chain of transfers/assignments to and from each intervening party.

36.     While Trust claims that it is the "holder and owner" of the Note and the beneficiary of the Mortgage, there are no valid assignments of the foregoing documents to Trust.

37.     Plaintiff further alleges that no documents or records can be produced that demonstrate that prior to the closing date for Trust, the Note was duly indorsed, transferred and delivered to Trust, including all intervening transfers. Nor can any documents or records be produced that demonstrate that prior to the closing date, the Mortgage was duly assigned, transferred and delivered to the Trust, via the trustee, including all intervening transfers/assignments.

38.     Based upon the foregoing, Plaintiff is further informed and believes, and thereon alleges, that the following deficiencies exist, in the securitization process as to the Mortgage which renders invalid any security interest in the said mortgage, including, but not limited to:

a)      The splitting or separation of title, ownership and interest in Plaintiff's Note and Mortgage of which the original lender is the holder, owner and beneficiary of Plaintiff's Mortgage;

b)      When the loan was sold to each intervening entity, there were no Assignments of the Mortgage to or from any intervening entity at the time of the sale;

c)      The failure to assign and transfer the beneficial interest in Plaintiff's Mortgage to Trust, in accordance with the PSA of the Defendants, as Securitization Participants;

d)      The failure to indorse, assign and transfer Plaintiff's Note and/or mortgage to Trust, in accordance with the PSA and applicable New York law and/or the Uniform Commercial Code;

e)      No Assignments of Beneficiary or Indorsements of the Note to each of the intervening entities in the transaction ever occurred which is conclusive proof that no true sales occurred as required under the PSA filed with the SEC; and

f)      Defendants violated the pertinent terms of the PSA.

39.     Plaintiff, therefore, alleges, upon information and belief, that none of the parties to neither the securitization transaction, nor any of the Defendants in this case, hold a perfected and secured claim in the Property; and that all Defendants are estopped and precluded from asserting an unsecured claim against Plaintiff's estate.

## COUNT I:
## DECLARATORY RELIEF

40.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

41.     An actual controversy has arisen and now exists between Plaintiff and Defendants regarding their respective rights and duties, in that Plaintiff contends that Defendants, and each of them, do/did not have a valid secured interest in the Property sufficient to foreclose against the Property because Defendants, and each of them, have failed to perfect any security interest in the Property, and/or cannot prove that they have a valid interest in the Property (as a real party in interest) to foreclose. Thus, the purported power of sale, or power to foreclose judicially, by the Defendants, and each of them, no longer applies.

42.     Plaintiff further contends that the Defendants, and each of them, do not have the right to foreclose on the Property because said Defendants, and each of them, did not properly comply with the terms of Defendants' own securitization requirements (contained in the PSA) and falsify or fraudulently prepared documents required for Defendants, and each of them, to foreclose as a calculated and fraudulent business practice.

43.     Plaintiff requests that this Court find that the purported power of sale contained in the Note and Mortgage has no force and effect at this time, because Defendants' actions in the processing, handling and attempted foreclosure of this loan involved numerous fraudulent, false, deceptive and misleading practices, including, but not limited to, violations of State laws designed to protect borrowers, which has directly caused Plaintiff to be at an equitable disadvantage to Defendants.

44.     Alternatively, Plaintiff requests that this Court find that Defendants had/have no right to foreclosure against the Property.

**COUNT II:**
**FRAUD IN THE CONCEALMENT**

45.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

46.     Defendants concealed the fact that the Loans were securitized as well as the terms of the Securitization Agreements, including, inter alia: (1) Financial Incentives paid; (2) existence of Credit Enhancement Agreements, and (3) existence of Acquisition Provisions. By concealing the securitization, Defendants concealed the fact that Plaintiff' loan changed in character inasmuch as no single party would hold the Note but rather the Notes would be included in a pool with other notes, split into tranches, and multiple investors would effectively buy shares of the income stream from the loans. Changing the character of the loan in this way had a materially negative effect on Plaintiff that was known by Defendants but not disclosed.

47.     Defendants knew or should have known that had the truth been disclosed, Plaintiff would not have entered into the Loans.

48.     Defendants intended to induce Plaintiff based on these misrepresentations and improper disclosures.

49.     Plaintiff' reasonable reliance upon the misrepresentations was detrimental. But for the failure to disclose the true and material terms of the transaction, Plaintiff could have been alerted to issues of concern. Plaintiff would have known of Defendants true intentions and profits from the proposed risky loan. Plaintiff would have known that the actions of Defendant would have an adverse effect on the value of Plaintiff home.

50.     Defendants' failure to disclose the material terms of the transaction induced Plaintiff to enter into the loans.

51.     Defendants were aware of the misrepresentations and profited from them.

52.     As a direct and proximate result of the misrepresentations and concealment of Defendants, Plaintiff suffered damaged in an amount to be proven at trial, including but not limited to costs of the Loan, damage to Plaintiff's financial security, and emotional distress.

53.      Defendants are guilty of malice, fraud and/or oppression. Defendants' actions were malicious and done willfully in conscious disregard of the rights and safety of Plaintiff in that the actions were calculated to injure Plaintiff. As such Plaintiff is entitled to recover, in addition to actual damages, punitive damages to punish Defendants and to deter them from engaging in future misconduct.

## COUNT III:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

54.      Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

55.      The actions of Defendants, as set forth herein, have resulted in the Plaintiff being threatened with the loss of the Property.

56.      This outcome has been created without any right or privilege on the part of the Defendants, and, as such, their actions constitute outrageous or reckless conduct on the part of Defendants.

57.      Defendants intentionally, knowingly and recklessly misrepresented to the Plaintiff that Defendant's were entitled to exercise the power of sale provision contained in the Mortgage. In fact, Defendants were not entitled to do so and have no legal, equitable, or actual beneficial interest whatsoever in the Property.

58.      Defendants' conduct – fraudulently attempting to foreclose or claiming the right to foreclose on the Property, knowing that they have no right, title, or interest in said Property– is so outrageous and extreme that it exceeds all bounds which is usually tolerated in a civilized community.

59.      Such conduct was undertaken with the specific intent of inflicting emotional distress on the Plaintiff, such that Plaintiff would be so emotionally distressed and debilitated

that they would be unable to exercise legal rights in the Property; the right to title of the Property, the right to cure the alleged default, right to verify the alleged debt that Defendants were attempting to collect, and the right to clear title to the Property such that said title will regain its marketability and value.

60.     At the time Defendants began their fraudulent foreclosure proceedings, Defendants were not acting in good faith while attempting to collect on the subject debt. Defendants, and each of them, committed the acts set forth above with complete; utter and reckless disregard of the probability of causing Plaintiff to suffer severe emotional distress.

61.     As an actual and proximate cause of Defendants' attempt to fraudulently foreclose on Plaintiff's home or claim the right to foreclose on Plaintiff's home, Plaintiff has suffered severe emotional distress, including but not limited to lack of sleep, anxiety, and depression.

62.     The conduct of Defendants, and each of them, as herein described, was so vile, base, contemptible, miserable, wretched, and loathsome that it would be looked down upon and despised by ordinary people. Plaintiff is therefore entitled to punitive damages in an amount appropriate to punish Defendants and to deter other from engaging in similar conduct.

**COUNT IV:**
**SLANDER OF TITLE**

63.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

64.     Defendants, and each of them, disparaged Plaintiff' exclusive valid title by and through the preparing, posting, publishing, and recording of the documents previously described herein, including, but not limited to, the Notice of Default, Notice of Trustee's Sale, Trustee's Deed, and the documents evidencing the commencement of judicial foreclosure by a party who does not possess that right.

65.     Defendants knew or should have known that such documents were improper in that at the time of the execution and delivery of said documents, Defendants had no right, title, or interest in the Property. These documents were naturally and commonly to be interpreted as denying, disparaging, and casting doubt upon Plaintiff' legal title to the Property. By posting, publishing, and recording said documents, Defendants disparagement of Plaintiff' legal title was made to the world at large.

66.     As a direct and proximate result of Defendants' conduct in publishing these documents, Plaintiff's title to the Property has been disparaged and slandered, and there is a cloud on Plaintiff's title, and Plaintiff has suffered, and continues to suffer damages.

67.     As a further proximate result of Defendants' conduct, Plaintiff has incurred expenses in order to clear title to the Property. Moreover, these expenses are continuing, and Plaintiff will incur additional charges for such purpose until the cloud on Plaintiff's title to the property has been removed. The amounts of future expenses and damages are not ascertainable at this time.

68.     As a further direct and proximate result of Defendants' conduct, Plaintiff has suffered humiliation, mental anguish, anxiety, depression, and emotional and physical distress, resulting in the loss of sleep and other injuries to their health and well-being, and continue to suffer such injuries on an ongoing basis. The amount of such damages shall be proven at trial.

69.     At the time that the false and disparaging documents were created and published by the Defendants, Defendants knew the documents were false and created and published them with the malicious intent to injure Plaintiff and deprive him of his exclusive right, title, and interest in the Property.

70.     The conduct of the Defendants in publishing the documents described above was fraudulent, oppressive, and malicious. Therefore, Plaintiff is entitled to an award of punitive damages in an amount sufficient to punish Defendants for their malicious conduct and deter such misconduct in the future.

## COUNT V:
## QUIET TITLE

71.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

72.     All Defendants named herein claim an interest and estate in the Property adverse to Plaintiff.

73.     The claim of Defendants is without any right whatsoever, and Defendants have no right, estate, title, lien or interest in or to the property, or any part of the property.

74.     The claim of Defendants, and each of them, constitutes a cloud on Plaintiff's title to the property.

75.     Plaintiff believes, upon information and belief, that none of the Defendants hold a perfected and secured claim in the Property; and that Defendants are estopped and precluded from asserting an unsecured claim against Plaintiff's estate.

76.     Plaintiff requests that the Court enter a judgment in their favor quieting title as to Defendants, and all persons claiming under them.

## COUNT VI:
## CIVIL CONSPIRACY & PROMISSORY ESTOPPEL

77.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

78.     In connection with the application for and consummation of the loan, Defendants agreed between and among themselves to engage in actions and a course of conduct designed to further an illegal act or accomplish a legal act by unlawful means, and to commit one or more overt acts in furtherance of the conspiracy to defraud the Plaintiff.

79.     Defendants agreed between and among themselves to engage in the conspiracy to defraud Plaintiff for the common purpose of accruing economic gains for themselves at the expense of and detriment to the Plaintiff.

80.     Further, Defendants knowingly and intentionally had the Plaintiff sign away his Fifth and Fourteenth Amendment Rights granting the Defendant the power to non-judicial foreclosure without explaining the implication of so doing.

81.     The actions of the Defendants were committed intentionally, willfully, wantonly, and with reckless disregard for the rights of the Plaintiff.

82.     As a direct and proximate result of the actions of the Defendants resulting in fraud and breaches of fiduciary duties, Plaintiff has suffered damages.

83.     Plaintiff demands an award of actual, compensatory, and punitive damages in an amount not less than $1,500,000.

### COUNT VII
### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

84.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

85.     Defendants were obligated by either contract or common law to act in good faith and to deal fairly with Plaintiff.

86.     The purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance.

87.    The Note executed by Plaintiff contained several provisions that deal with the defined "Note Holder". The Defendants hid and concealed the Note Holder from Plaintiff to prevent them from exercising rights afforded to them by the Note and the ability to deal with and negotiate any payoff, changes to or settlement of complaints, and claims with the Note Holder.

88.    Unbeknownst to Plaintiff, their loan was used to create additional debt instruments that purported to obligate him to make payments on loans other than their own toward a securitized pool of mortgages. Further, Plaintiff' FICO score and property values were falsified to induce multiple investors, some of whom may have been betting on the failure of the loan pool in order to reap multiple returns on their investment.

89.    Defendants breached their duty to the Plaintiff by:

a)    failing to perform loan servicing functions consistent with their responsibilities to Plaintiff;

b)    failing to properly supervise their agents and employees including, without limitation, their loss mitigation and collection personnel and their foreclosure attorneys and default servicers;

c)    routinely making promises for modification figures when they knew no modification would be granted;

d)    making inaccurate calculations and determinations of Plaintiff's obligation and debt;

e)    refusing to provide Plaintiff with adequate information and documentation relating to their secured debt to determine the lawful holder in due course of their promissory note;

f)    failing to follow through on written, verbal, and implied promises;

g)      failing to give Plaintiff the promised modification while publicizing via news releases that they were giving discounts on principal balances;

h)      presenting a false and invalid "Assignment" of the loan documents knowing that the assignment was false and invalid.

90.  As a result of these failures to action good faith and the absence of fair dealing, Defendants have caused Plaintiff substantial harm and damages.

## COUNT VIII:
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

91.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

92.     The actions of Defendants, as set forth herein, have resulted in the Plaintiff being threatened with the loss of the Property.

93.     This outcome has been created without any right or privilege on the part of the Defendants, and, as such, their actions constitute outrageous or reckless conduct on the part of Defendants.

94.     Defendants intentionally, knowingly and recklessly misrepresented to the Plaintiff that the Defendants were entitled to exercise the power of sale provision contained in the Mortgage. In fact, Defendants were not entitled to do so and have no legal, equitable, or actual beneficial interest whatsoever in the Property.

95.     Defendants' conduct – fraudulently attempting to foreclose or claiming the right to foreclose on the Property, knowing that they have no right, title, or interest in said Property– is so outrageous and extreme that it exceeds all bounds which are usually tolerated in a civilized community.

96.     Such conduct was negligently undertaken and inflicted emotional distress on the Plaintiff, such that Plaintiff would be so emotionally distressed and debilitated that they would be unable to exercise legal rights in the Property; the right to title of the Property, the right to cure the alleged default, right to verify the alleged debt that Defendants were attempting to collect, and the right to clear title to the Property such that said title will regain its marketability and value.

97.     At the time Defendants began their fraudulent foreclosure proceedings, Defendants were not acting in good faith while attempting to collect on the subject debt. Defendants, and each of them, committed the acts set forth above with negligent disregard of the probability of causing Plaintiff to suffer severe emotional distress.

98.     As an actual and proximate cause of Defendants' attempt to fraudulently foreclose on Plaintiff's home or claim the right to foreclose on Plaintiff's home, Plaintiff has suffered severe emotional distress, including but not limited to lack of sleep, anxiety, and depression.

99.     The conduct of Defendants, and each of them, as herein described, was so vile, base, contemptible, miserable, wretched, and loathsome that it would be looked down upon and despised by ordinary people. Plaintiff is therefore entitled to punitive damages in an amount appropriate to punish Defendants and to deter other from engaging in similar conduct.

**PRAYER FOR RELIEF**

WHEREFORE Plaintiff respectfully requests for the following:

**AS TO COUNT I: DECLARATORY RELIEF**

A.      Declare that the Trust does not have an enforceable secured or unsecured claim against the Property;

B.      Declare that Defendants do not have an enforceable secured or unsecured claim against the Property;

C.      Declare that the Plaintiff owns the Property free and clear of all encumbrances of the Defendants or anyone claiming by or through the Defendant;

D.      Award Damages in an amount to be determined by proof at trial;

E.      Award costs, interest, and attorney's fees.

## AS TO COUNT II: FRAUD IN THE CONCEALMENT

A.      Award Damages in an amount to be determined by proof at trial;

B.      Award Punitive Damages as allowed by law;

C.      Award costs, interest, and attorney's fees.

## AS TO COUNT III: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

A.      Award Damages in an amount to be determined by proof at trial;

B.      Award Special Damages in an amount to be determined by proof at trial;

C.      Award Punitive Damages as allowed by law;

D.      Award costs, interest, and attorney's fees.

## AS TO COUNT IV: SLANDER OF TITLE

A.      Award Plaintiff exclusive possession of the Property;

B.      Determine that Defendants, and all persons claiming under them, have no estate, right, title, lien, or interest in or to the Property;

C.      Award Damages in an amount to be determined by proof at trial;

D.      Award Punitive Damages as allowed by law;

E.      Award costs, interest, and attorney's fees.

**AS TO COUNT V: QUIET TITLE**

  A.  Award Plaintiff exclusive possession of the Property;

  B.  Determine that Defendants, and all persons claiming under them, have no estate, right, title, lien, or interest in or to the Property;

  C.  Award Damages in an amount to be determined by proof at trial;

  D.  Award Punitive Damages as allowed by law;

  E.  Award costs, interest, and attorney's fees.

**AS TO COUNT VI: CIVIL CONSPIRACY**

  A.  Award Damages in an amount to be determined by proof at trial;

  B.  Award Punitive Damages as allowed by law;

  C.  Award costs, interest, and attorney's fees.

**AS TO COUNT VII: BREACH OF COVENANT OF GOOD FAITH & FAIR DEALING**

  A.  Award Damages in an amount to be determined by proof at trial;

  B.  Award Punitive Damages as allowed by law;

  C.  Award costs, interest, and attorney's fees.

**AS TO COUNT VIII: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

  A.  Award Damages in an amount to be determined by proof at trial;

  B.  Award Special Damages in an amount to be determined by proof at trial;

  C.  Award Punitive Damages as allowed by law;

  D.  Award costs, interest, and attorney's fees.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, plaintiff demands a trial by jury for

issues so triable.


Dated:   Queens, New York
         February 3, 2016

                                    Respectfully Submitted,

                                    _____
                                    Subhan Tariq, Esq.
                                    90-52 171 Street
                                    Jamaica, NY 11432
                                    Ph: 516-900-4529
                                    Fax: 516-453-0490
                                    subhan@tariqlaw.com
                                    *Attorney for Plaintiff*

## VERIFICATION

The undersigned, an attorney, duly admitted to practice law before this court, hereby says:

That deponent is the attorney of record for the plaintiff in the within action; that deponent has read the foregoing and knows the contents thereof, that the same is true to the deponent's own knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to these matters, deponent believes them to be true. Deponent further says that the reason this verification is made by deponent and not by the plaintiff is that the plaintiff resides in a county other than that in which deponent maintains their offices.

The undersigned affirms that the foregoing statements are true.


Dated: Queens, New York
       February 3, 2016

Subhan Tariq, Esq.
90-52 171 Street
Jamaica, NY 11432
Ph: 516-900-4529
Fax: 516-453-0490
subhan@tariqlaw.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that a copy of the Summons and Complaint will be served upon defendants listed

below in compliance with Fed. R. Civ. P. Rule 4:

Bayview Loan Servicing LLC
% Corporation Service Company
80 State Street
Albany, NY 11207

JPMorgan Chase Bank NA
% CT Corporation System
111 Eighth Avenue
New York, NY 10011

Federal Home Loan Mortgage Corporation
8200 Jones Branch Drive
Mclean, Virginia 22102

Dated:   Queens, New York
        February 3, 2016

                             Subhan Tariq, Esq.
                             90-52 171 Street
                             Jamaica, NY 11432
                             Ph: 516-900-4529
                             Fax: 516-453-0490
                             subhan@tariqlaw.com
                             *Attorney for Plaintiff*